Gail L. Chung (CA State Bar No. 212334)
**OUTTEN & GOLDEN LLP**
One Embarcadero Center, 38th Floor
San Francisco, CA 94111

Jack A. Raisner[1]
René S. Roupinian[2]
**OUTTEN & GOLDEN LLP**
3 Park Avenue, 29th Floor
New York, NY 10016

*Attorneys for Plaintiff Peter Wojciechowski and the certified class*

Stephen T. O'Neill (115132)
Robert A. Franklin (091653)
**DORSEY & WHITNEY LLP**
305 Lytton Avenue
Palo Alto, CA 94301

*Attorneys for Defendants ClearEdge Power, Inc.*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

In re:

CEP REORGANIZATION, INC.,
formerly known as ClearEdge Power Inc.,
Employer Tax I.D. No. 20-0119415

Debtors.

PETER WOJCIECHOWSKI on his own behalf
and on behalf of all other persons similarly
situated,

Plaintiff,

v.

CLEAREDGE POWER, INC. and
CLEAREDGE POWER, LLC,

Defendants.

CASE NO.: 14-44191-CN-1
14-44191-CN-2
14-44191-CN-3

Cases Jointly Administered Under Chapter 11

ADV. CASE NO. **14−4152**

**Date: January 28, 2016
Time: 10:00 a.m.
Place: Oakland Courtroom 215
Judge: Hon. Charles Novack**

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION
FOR: AN ORDER (I) PRELIMINARILY APPROVING SETTLEMENT AGREEMENT
RESOLVING WARN ACT CLAIMS; (II) APPROVING THE FORM AND MANNER
OF NOTICE TO CLASS MEMBERS OF THE PROPOSED SETTLEMENT
AGREEMENT; AND (III) SCHEDULING A FINAL FAIRNESS HEARING FOR**

[1 and 2] Admitted *pro hac vice*

**APPROVAL OF THE SETTLEMENT AGREEMENT AND
AN ORDER FINALLY APPROVING THE SETTLEMENT AGREEMENT,
<u>INCLUDING CLASS COUNSEL'S FEES AND EXPENSES</u>**

Plaintiff Peter Wojciechowski and Defendants CEP Reorganization, Inc., formerly known as ClearEdge Power, Inc. and CEP Reorganization, LLC, formerly known as ClearEdge Power, LLC (together, the "Parties") hereby submit this memorandum of law in support of their motion (the "Joint Motion"), pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 23 of the Federal Rules of Civil Procedure, made applicable hereto by Bankruptcy Rule 7023 (hereinafter "Rule 23"), for the entry of orders: (a) approving the Settlement and Release Agreement dated December 23, 2015 (the "Settlement Agreement" or the "Settlement"), (b) approving the form and manner of notice to Class Members, (c) scheduling a fairness hearing (the "Fairness Hearing") to consider final approval of the Settlement Agreement pursuant to Civil Rule 23 and Bankruptcy Rule 7023, (d) after the Fairness Hearing, finally approving the Settlement Agreement including Class Counsel's fees and expenses, and (e) granting related relief.

A true and correct copy of the Settlement Agreement is attached hereto as <u>Exhibit A</u>. In support of the Joint Motion, the Parties respectfully represent as follows:

## I.     <u>INTRODUCTION</u>

1.     The Class Representative sued Defendants for allegedly failing to provide 60 days written notice to its employees before ordering mass layoffs and/or plant closings, as required by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.* (the "WARN Act") on or about April 25, 2014 (the "WARN Class Action"). The Class Representative also sought payment for himself and the Class Members for all unpaid wages, including unpaid

2

accrued vacation pay and fringe benefits, in violation of Conn. Gen. Stat., §§ 31-76k, 31-71a to 31-71i ("Connecticut Wage Law").

2. Class Counsel contends that, should the Class Representative prevail in the litigation, the WARN Act priority claim of the approximately 259 Class Members for 60 days wages and benefits would be approximately $4.9 million. The total damages within the priority cap of $12,450 for the class members is approximately $3.2 million, assuming no other priority wages are owed, plus attorneys' fees and expenses, and that such claims are entitled to priority status under 11 U.S.C. § 504 (a)(4). Under the Settlement Agreement, in exchange for a full release for any claim arising from the mass layoffs and/or plant closings, the Class shall have an allowed wage priority claim in a total amount of $1,300,217.43 (the "Settlement Amount") under 11 U.S.C. § 507(a)(4), from which the Class Representative Payment (as defined herein) and Class Counsel's fees and expenses shall be paid, to the extent approved by the Bankruptcy Court. The Settlement Amount will be distributed to Class Members in accordance with the terms of the Settlement Agreement (defined below).

3. Litigation of the WARN Class Action would be protracted and expensive. The Defendants contend that the terminations on April 25, 2014 were caused by a sudden and dramatic event outside of Defendants' control and that at the time WARN notice was due, Defendants were actively seeking capital or financing that would have allowed it to avoid the terminations. Accordingly, Defendants contend that unforeseeable business circumstances and faltering company exceptions to the WARN Act excused Defendants from providing 60 days written notice to its employees in advance of their termination.

4. The Class Representative contends that the terminations were foreseeable more than 60 days prior to April 25, 2014, and that the events that led to the terminations were not

Case: 14-04152   Doc# 54-1   Filed: 12/24/15   Entered: 12/24/15 10:27:20   Page 3 of 27

only foreseeable, but inevitable. The Class Representative also contends that none of the other WARN Act exceptions are applicable.

5. A trial on the applicability of the unforeseeable business circumstances and faltering company exceptions would require both sides to engage in more extensive expert and non-expert discovery at significant expense and with inherently uncertain results at trial.

6. Moreover, if the Court found that Class Members were entitled to even one more day of notice than they were provided, then Class Members contend that they would be the prevailing parties entitled to not only their damages, but their attorneys' fees and expenses, risking further depletion of the estate's resources. The proposed Settlement Agreement provides a global resolution to the WARN Class Action.

7. The Parties believe that without the settlement, the Class could wait years for any payment on their alleged WARN claims, even if they prevail at trial and on appeal, and risk depletion of the estate through continued administrative and litigation costs.

8. In light of these factors, the Parties have determined that the terms of the Settlement Agreement are fair and reasonable. The Committee, which actively participated in negotiations, supports the Settlement Agreement.

9. The Parties request a two-step approval process to facilitate notice to Class Members and approval of the Settlement Agreement. First, the Parties will seek at an initial hearing preliminary approval of the Settlement Agreement and the form of notice to be given to the Class Members ("Class Notice") by first class mail. The Class Notice will describe the terms of the Settlement Agreement, inform Class Members of their right to object to the Settlement Agreement, set forth the deadline for objections, and set the date and time of the second hearing, including the Fairness Hearing, to determine final approval of the Settlement Agreement. The relief sought at the initial hearing is referred to hereinafter as the "Preliminary Relief."

4

10.     Second, after service of the Class Notice, the Parties request that the Court hold a Fairness Hearing and finally approve the Settlement Agreement.

11.     Based on the foregoing, and as set forth more fully below, the Parties submit that the Court should approve the Settlement Agreement and the procedures proposed in this Motion.

## II.     JURISDICTION

12.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334.

13.     The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)and (B).

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1408.

## III.     BACKGROUND

15.     On May 4, 2014, (the "Petition Date"), Defendants  each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. with the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"). The cases are being jointly administered under Bankruptcy Case Number 14-51955-CN-11.

16.     On May 2, 2014, Plaintiff commenced the above-captioned adversary proceeding (the "Adversary Proceeding") alleging that Defendants violated various provisions of the WARN Act. (Doc. 1). The Adversary Proceeding is entitled *Wojciechowski v. ClearEdge Power, Inc.,* et al., Adv. No. 14-4152-CN (Bankr. N.D. CA).

17.     On August 1, 2014, Defendants filed and served its answer denying any violations of the WARN Act and/or asserting various affirmative defenses, including unforeseeable business circumstances, faltering company, and good faith. (Doc. 9).

18.     On October 24, 2014, the Court granted Plaintiff's Motion for Class Certification and Related Relief (Doc. 29) and certified a class comprising Plaintiff and other similarly situated former employees who worked at or reported to one of Debtors' Facilities and were

5

terminated without cause on or about April 25, 2014, or within 30 days of that date, or were terminated as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Debtors on or about April 25, 2014, who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5), and who have not filed a timely request to opt-out of the class. Notice of the Class Action was sent to the Class on December 22, 2014 (Doc. 32), with an opt-out deadline of January 22, 2015. No class member elected to opt-out of the Class. (Doc. 34).

## IV. DISCOVERY, MEDIATION AND SETTLEMENT NEGOTIATIONS

19.     On May 18, 2015, Plaintiff served his First Request for Production of Documents and First Set of Interrogatories to Defendants. Defendants responded on July 22, 2015.

20.     On May 11, 2015, the parties and the Committee attended Mediation in San Francisco before mediator, Christopher Sullivan, Esq. The parties were unable to reach a settlement at that time, but continued to engage in informal settlement discussions regarding the strengths and weaknesses of the Parties' claims and defenses and exchanged data to assist in determining the maximum theoretical damages.

21.     On August 7, 2015, Defendants served their First Request for Production of Documents and First Set of Interrogatories to Plaintiff.

22.     Following mediation, the parties and the Committee continued to discuss settlement. The complexity of the factual and legal issues, the uncertainty of a specific result, along with the inherent delay and substantial expense of litigation, led the Parties to conclude that it is in their respective best interests to resolve their disputes through a comprehensive compromise.

6

23. The Parties have memorialized the terms of their compromise in the Settlement Agreement. The Settlement Agreement is a settlement of any and all claims asserted, or which could have been asserted, in the WARN Class Action.

## V. SIGNIFICANT TERMS OF THE SETTLEMENT AGREEMENT

24. The material terms of the Settlement Agreement are as follows[2]:

   a. Creation of a Settlement Amount: Provides that the Settlement Class shall have an allowed claim under 11 U.S.C. § 507(a)(4) in a total amount of $1,300,217.43 (the "Settlement Amount"), from which the Class Representative Payment (as defined herein) and Class Counsel's fees and expenses shall be paid, to the extent approved by the Bankruptcy Court (the "WARN Claim");

   b. Distribution of Settlement Amount: Distributions to individual Eligible Class Members shall be allocated to each Class Member on a pro rata basis based on the relationship that such Class Member's potential damages under the WARN Act bears to the aggregate potential damages of all Class Members under the WARN Act and shall be made contemporaneously with the payment of Class Counsel's Fees and Expenses and the Class Representative Payment;

   c. Payment to Class Representative: Provides for a one-time payment of Ten Thousand dollars ($10,000), payable from the Settlement Amount to the Class Representative Peter Wojciechowski, as compensation for his services to the Class in addition to his pro rata share of the Settlement Amount;

   d. Class Counsel's Fees: Provides for attorneys' fees in the amount of one-third (33 ⅓%), net of litigation expenses (including the costs associated with the production and mailing of the class notice to the Class), from the Settlement Amount;

   e. Release of Defendants: Upon the Effective Date of the Settlement Agreement (as defined in the agreement), the Class Members shall release Defendants and their respective bankruptcy estates, (ii) each of Defendants' current and former shareholders, officers, directors, employees, accountants, attorneys, representatives and other agents, and all of their respective predecessors, successors and assigns, excluding any third parties which may or may not be affiliated with Defendants including, but not limited to, Kohlberg Ventures LLC., (the "Released Parties") of and from any and all claims which relate to or are based on the WARN Action or claim under federal, state or local law or regulation

---

[2] This is a summary of the Settlement Agreement. In the event of a difference in this summary and in the Settlement Agreement, the terms of the Settlement Agreement will control.

7

arising out of the termination of the Class Members' employment by Defendants.

f.   <u>Issuance of Notice of the Settlement</u>: Provides that Class Counsel will provide Notice of Settlement to the Class Members by first class mail to each Class Member's last known address upon entry of this Court's order granting preliminary approval of the settlement, indicating:

- that the Settlement Agreement shall become effective only if it is finally approved by the Bankruptcy Court;

- that such Class Member has the right to object to this Settlement Agreement in person, to retain counsel and be heard at the Fairness Hearing; and

- that all Released Claims of a Class Member (other than those claims to be paid under the terms of the Settlement Agreement) shall be waived, and that no person, including the Class Member, shall be entitled to any further distribution thereon.

g.   <u>Residual Funds</u>:  Provides that settlement checks mailed to Class Members that are not cashed within 90 days shall shall be held another 60 days to be used to make distributions to any individual who is subsequently determined to be eligible to receive a distribution then become property of the liquidating trust to be established under the Plan, free and clear of any and all claims and interests of the Class Members, but subject to further redistribution in accordance with Defendants' plan of confirmation.

## VI.   <u>MANNER OF NOTICE OF SETTLEMENT TO THE CLASS</u>

25.     Upon entry of an order preliminarily approving the Settlement Agreement, approving the form and manner of notice to the members of the Class, and scheduling a Fairness Hearing, the Parties propose that the Notice of the Proposed Settlement of Class Action and Fairness Hearing that is attached to the Settlement Agreement as <u>Exhibit B</u> be served on all Class Members, and such notice shall comprise notice to the Class Members as is necessary for approval of the Settlement Agreement.

26.     The Parties further submit that service of the Class Notice by first class mail, postage prepaid, to each Class Member at each Class Member's last known address as shown in the Defendants' records, as updated by Class Counsel, is the best notice practicable under all the circumstances. *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D.Cal. 2008). Furthermore, while

8

Rule 23, as adopted by Bankruptcy Rule 7023, does not impose a minimum notice period, the Parties have attempted to ensure that the parties in interest in the Chapter 11 Cases and all potential Class Members receive a minimum of 21 days' notice of the Fairness Hearing, as required under Bankruptcy Rule 2002.

27.     Although no rigid standards govern the contents of notice to Class Members, "the notice must be "adequate to 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal.App. 4th 1135, 1164 (2000) (citation omitted).

28.     Here, the proposed Class Notice is accurate, informative, and readable by the average person. *See*, *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1025 (9th Cir. 1998) ("no evidence of such wide-scale confusion or ignorance in the record" despite objector's contention that some class members did not understand the contents of the notice). The proposed Class Notice satisfies all the requirements of Rule 23(c)(2)(B). *See also*, *Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 474-475 (E.D. Cal. 2009). The Class Notice is written in simple, plain language, and provides key information about the Settlement Agreement, so that each Class Member can choose what to do, as well as the date, time, and place of the final hearing to consider approval of the Settlement Agreement. The Class Notice also provides that Class Members will be bound by the judgment and that they have the right to object to the Settlement. The Class Notice further explains how to object to the Settlement and provides the deadline for submitting objections. Further, as required, the Class Notice is neutral as to the merits of the proposed Settlement Agreement.

29.     The proposed method of notice is also adequate. Since the Class Notices will be mailed to the Settlement Class members' home addresses as reflected in the Defendants' books

9

and records, and Class Counsel will follow up on any undeliverable mailings, this method will provide Settlement Class Members with the greatest opportunity to receive notice. *Wright,* 259 F.R.D. at 475 ("[n]otice by mail is sufficient to provide due process to known affected parties, so long as the notice is "reasonably calculated … to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."), *citing Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 318, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In light of the nature of the relief requested, the Parties submit that no other or further notice need be given.

## VII.    THE BASIS FOR THE REQUESTED RELIEF

### a.    Compromises Are Favored in Bankruptcy

30.    Bankruptcy Rule 9019(a) authorizes a bankruptcy court to approve a compromise or settlement after notice and a hearing, and section 105 of the Bankruptcy Code empowers a court to issue any order that is "necessary or appropriate". 11 U.S.C. § 105(a). The purpose of a compromise agreement is to allow the [debtors] and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane*, 784 F.2d 1377, 1380-1381 (9th Cir. 1986) ("*Martin")*. "[T]he bankruptcy court has great latitude in approving compromise agreements." *Woodson v. Firemen's Fund Ins. Co.*, 839 F.2d 610, 620 (9th Cir. 1988).

31.    A court should approve a settlement "if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1334 (N.D. Cal. 2014), *citing Harris v. Vector Mktg. Corp.,* No. 08–cv–05198 EMC, 2011 WL

10

1627973, at *7 (N.D.Cal. Apr. 29, 2011); *In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).

32.     The Ninth Circuit has identified the following factors for consideration in determining the reasonableness, fairness, and equity of a proposed settlement in a bankruptcy setting: (a) the probability of success; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation, and the expense, inconvenience, and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986); *In re Endoscopy Center of Southern Nevada, LLC*, 451 B.R. 527, 535-536 (Bankr.D.Nev. 2011). Consideration of these factors does not require the Court to decide questions of law or make findings of fact raised by the controversies sought to be settled, or to determine whether the settlement presented is the best one that could possibly have been achieved.

33.     In approving a settlement agreement, the Court need not conduct an exhaustive investigation into the validity of, nor a mini-trial upon, the merits, of the claims sought to be compromised. *United States v. Alaska Nat'l Bank*, 669 F.2d 1325, 1328 (9th Cir. 1982). In weighing the evidence, "the bankruptcy judge may give weight to the opinions of the trustee, the parties, and their attorneys." *In re Richmond Produce Co., Inc.*, No. C−93−0390−EFL, 1993 WL 470434, at *3 (N.D. Nov. 10, 1993); *citing In re A&C Properties*, 784 F.2d at 1384.

34.     It is sufficient that the settlement agreement was negotiated in good faith and is reasonable, fair and equitable. *In re A&C Properties*, 784 F.2d at 1381. *See also, National Rural Telecommunications Cooperative v. DIRECTV, Inc.,* 221 F.R.D. 523, 525 (C.D.Cal. 2004) ("The "universally applied standard" in determining whether a court should grant final approval to a class action settlement is whether the settlement is "fundamentally fair, adequate, and reasonable."), *citing* 5 Moore Federal Practice, § 23.85 (Matthew Bender 3d ed.) (*citing In re*

11

*Pacific Enters. Sec. Litig.,* 47 F.3d 373, 377 (9th Cir.1995) and *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir.1992), *cert. denied.,* 506 U.S. 953, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992)).   In some cases, "not all of these factors will apply to every class action settlement. Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *National Rural Telecommunications Cooperative,* 221 F.R.D. at 525, *citing, Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993).

**b.      The Proposed Compromise Should be Approved**

35.      The proposed compromise satisfies all of the relevant considerations for fairness and reasonableness under the factors usually considered by Ninth Circuit courts and therefore should be approved by the Court.

**1.      Probability of Success in the Litigation**

36.      As noted above, the Adversary Proceeding seeks the payment of several millions of dollars against Defendants' bankruptcy estates on a priority basis. Defendants believe that under the circumstances, they have meritorious defenses to the assertion of claims under the WARN Acts, including the so-called "faltering company" and "unforeseeable business circumstances" exceptions. However, Defendants' ability to maintain their defenses is unknown. In the final analysis, it seems likely that should the matter be litigated, there is a very real chance of a trier of fact finding that liability exists under the WARN Act. Therefore, at a minimum, the result of litigation on this issue is uncertain and subject to what might be a lengthy appellate review.

**2.      Difficulties in Collection**

37.      Because Defendants are defending the Adversary Proceeding, the difficulty of collection factor does not come into play with respect to the proposed settlement of the Adversary Proceeding.

12

### 3. Complexity of Litigation and Expense, Inconvenience and Delay

38.     There are three aspects to the complexity of litigation on the Adversary Proceeding, and the presence of each strongly militates in favor of a settlement.  First, Plaintiff's allegations and Defendants' defenses to the claims under the WARN Act are fact intensive, and could require discovery regarding, potentially, each of the 260 or so members of the class. Discovery regarding the Defendants' financial affairs leading up to the terminations would also be fact intensive and lengthy, significantly reducing the funds ultimately available for creditors.

39.     Finally, the result of such litigation would doubtless be appealed, potentially delaying resolution of Defendants' bankruptcy proceedings – or at least the effectiveness of any proposed plan of confirmation – for a year or more. Such delay likely would not benefit the Defendants' former employees and Class Members which retain claims for unpaid wages and benefits and who will receive payments relatively soon under the proposed settlement.

### 4. Paramount Interest of Creditors

40.     The cooperation of the parties has now yielded the compromise embodied in the Settlement Agreement. Undoubtedly, the proposed compromise is beneficial to creditors, and especially all the former employees – not just the Class Members– because it clears the way for eventual confirmation of Defendants' bankruptcy Plan. On the other hand, without a settlement, and because of the large claims which are asserted in the Adversary Proceeding, eventual confirmation of Defendants' plan might be delayed for a considerable length of time. The Defendants and the Committee believe that all constituencies took this reality into account in reaching the proposed settlement.  All in all, Defendants submit that the proposed compromise is reasonable and adequate under the circumstances and should be approved. Moreover, Defendants believe it is well within its business judgment in seeking to resolve the Adversary Proceeding by means of the settlement.

13

## VIII.   PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT

### a.   Approval of Settlement Agreement Under Rule 23

41.   Rule 23 provides that "[a] class action shall not be dismissed or compromised without the approval of the court." Therefore, a court must carefully examine a class action settlement under Fed. R. Civ. P. 23(e) to ensure its fairness, adequacy and reasonableness. *National Rural Telecommunications Cooperative,* 221 F.R.D. at 525, and to ensure that the settlement was not a product of collusion between the parties. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998) (no evidence of collusion in negotiations to settle class action).

42.   Although Fed. R. Civ. P. 23(e) does not specify any particular procedure as to how a court should review a class action settlement, a number of courts have adopted a two-step procedure, consisting of preliminary approval of the settlement before notice is given to class members, and a subsequent "fairness hearing," at which all class members have an opportunity to be heard on whether final approval of the settlement should be granted. *Hanlon v. Chrysler Corp*., 150 F.3d at 1027 (fairness hearings for approval of class settlement "reveal an exhaustive presentation by the objectors raising virtually all of the issues noted in the briefs and in oral argument before this court."); *Alberto v. GMRI, Inc.*, 252 F.R.D. at 658-659 (two-step process to determine whether to approve a class action settlement).  The purpose of the preliminary approval is to evaluate the settlement to determine whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." Manual for Complex Litigation, Second § 30.44 (1985); *Hanlon*, 150 F.3d at 1027.

43.   Consistent with the case law employing a two-step procedure, the Parties request that the Court, at the hearing on the Joint Motion, grant preliminary approval of the Settlement

14

Agreement, set a date for a final hearing on the Joint Motion, approve the form of the Class Notice and subsequent to the final fairness hearing, enter an Order finally approving the Settlement Agreement.

### b.    A Presumption of Fairness Applies to the Settlement Agreement

44.    When a proposed settlement is the result of arm's-length negotiations, there is a presumption that it is fair and reasonable. *See* 2 Newberg & Conte, *Newberg on Class Actions* §11.41 at 11-88 (3d ed. 1992); *Manual for Complex Litigation* §30.42. Indeed, a trial court is directed to operate under a presumption of fairness when, *inter alia*, the settlement is the result of arms-length negotiation, there has been investigation and discovery that are sufficient to permit counsel and the court to act intelligently, and counsel are experienced in similar litigation.  Due to the bankruptcy and limited assets in Defendants' estate, this matter was very time sensitive, and in the interests of preserving the assets of the estate so as to maximize a potential recovery for the Class Members, the Movants worked cooperatively in exchanging information rather than conducting formal discovery. In this regard, the Parties and the Committee conferred and exchanged information informally prior to informal settlement negotiations, as well as in advance of the all-day mediation, which the Parties and the Committee attended in person. Thus, the Parties and the Committee were enabled to make an informed decision regarding settlement. The Parties and the Committee believe the settlement to be in the best interest of Defendants, and the Class Members, taking into account the costs and risks of continued litigation. The opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See, e.g.*, *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901., 1992 WL 226321 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement); *Kirkorian v. Borelli*, 695 F.Supp.446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled to

15

considerable weight); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979)

(recommendations of plaintiff's counsel should be given a presumption of reasonableness). Thus,

this Court should grant this Motion.

45.     Preliminary approval of the settlement should be granted if there are no "grounds

to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class

representatives or segments of the class, or excessive compensation for attorneys, and appear to

fall within the range of possible approval." *Manual for Complex Litigation* §30.41, at 236-37 (3d

ed. 1995); *Alberto*, 252 F.R.D. at 667 ("At this preliminary approval stage, the court again need

only "determine whether the proposed settlement is within the range of possible approval.")

(citation omitted). The proposed Settlement Agreement satisfies the standard for preliminary

approval as it is within the range of possible approval and there are no grounds to doubt its

fairness. The Plaintiffs allege that the maximum claims of the Class exceeds four million dollars.

While Defendants contend that the WARN claims were without merit, if Plaintiffs had prevailed,

Plaintiffs contend the WARN claims should be entitled to priority status and that they would be

entitled to attorneys' fees and costs. *In re Arrow Transport Co. of Delaware*, 224 B.R. 457, 461

(D. Oreg. 1998) ("[The WARN Act] 29 U.S.C. § 2104(a) is what is commonly called a fee

shifting statute.").  The settlement resolves the disputes over these issues and provides the Class

Members with payments after the Effective Date of their *pro rata* share of the Settlement

Amount. Likewise, the Settlement Agreement will provide for dismissal of the Adversary

Proceeding. Thus, the Parties and the Committee believe that the settlement will provide

substantial benefits to Class Members, reduce litigation costs, eliminate uncertainty, and provide

finality to the Adversary Proceeding.

16

## IX.     FINAL APPROVAL OF THE SETTLEMENT

46.     Rule 23(e)(1)(C) of the Federal Rules provides that [t]he court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C).

47.     The Ninth Circuit favors class settlements: "When reviewing class action settlements, we have a 'strong judicial policy that favors settlements'." *In re Pacific Enterprises Litigation*, 47 F. 3d 373, 378 (9th Cir. 1995) (citation omitted). In *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993), the Ninth Circuit reaffirmed the settled rule that a class "settlement should be approved if it is fundamentally fair, adequate and reasonable'." (citation omitted). In *Officers for Justice v. Civil Serv. Comm. of San Francisco*, 688 F. 2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983), the court stated that this determination requires a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

48.     In *Torrisi*, 8 F.3d at 1375, the Ninth Circuit reaffirmed the factors delineated in *Officers for Justice* and declared, as did the Court in *Officers for Justice*, that "this list is not exclusive and different factors may predominate in different factual contexts." *Id*. at 1376. The Parties submit that the Settlement should also be approved as fair, reasonable and adequate to the Settlement Classes under the factors enumerated by the Ninth Circuit:

- As set forth above, litigation of the Adversary Proceeding would have been complicated, protracted and expensive. The Class Representative supports the

17

Settlement and Class Counsel believes that the bulk of the other Class Members will have a favorable reaction to the Settlement and not object to it.

- The Settlement was reached after the essential facts had been thoroughly investigated by Class Counsel, including informal disclosure from Defendants.

- Class Counsel believes that the settlement is fair and reasonable and in the best interests of the Class.

- As set forth above, the risks of being unable to fully establish liability and damages on both claims were present because of the affirmative defenses which Defendants assert.

- The Settlement provides for Class Members to receive their *pro rata* share of the Settlement Amount on or as soon as reasonably practicable after the Effective Date.

- The Parties submit that the settlement is well within the range of reasonableness given the uncertainty of establishing liability and damages.

49.      To sum up, the majority of the relevant factors strongly support approval of the Settlement. Accordingly, in addition to approving Defendants' entry into the compromise, the Court should preliminarily approve the settlement and at a later the fairness hearing the Court should finally approve the settlement as "fair, reasonable and adequate" to the Class.

## X.      APPROVAL OF CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS

50.      Class Counsel is entitled to be paid a fee out of the settlement fund created for the benefit of the Class.  Fed. R. Civ. P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980) (the Supreme Court has consistently recognized the common fund doctrine to permit attorneys who obtain a recovery for a class to be compensated from the benefits achieved as a result of their efforts); *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984) (calculation of fees based on the common-fund doctrine is based on a percentage of the common fund recovered). Defendants do not oppose this request and are neutral as to the points discussed in this section.

18

51.     The Ninth Circuit specifically authorizes the use of the percentage of recovery method in common fund cases. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  Courts routinely award fees of one third of the common fund.  See *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373,379 (9th Cir. 1995) (awarding 33% of $12 million common settlement fund); *In re Omnivision Techs., Inc.*, 2007 WL 4293467 at *10 (N.D. Cal. Dec. 6, 2007) ("in most common fund cases, the award exceeds that [25%] benchmark"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of fees equal to one-third of total recovery); *In re Public Serv. Co. of New Mexico*, 1992 WL 278452 at *1, *12 (S.D. Cal. July 28, 1992) (same); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 WL 427893 at *1, *4 (S.D. Cal. May 6, 1991) (same); I*n re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *1, *10 (S.D. Cal. Aug. 30, 1990) (awarding 30% in fees, plus expenses); *In re Activision Sec. Litig.*, 723 F. Supp 1373, 1375 (N.D. Cal. 1989) (awarding a 32.8% fee and adopting a "policy of awarding approximately 30% of the fund as attorneys' fees in the ordinary case," as "well-justified in light of the lengthy line of cases which find such an award appropriate and reasonable .... ").

52.     When assessing whether the percentage requested is reasonable, courts look to factors such as: "(a) the results achieved; (b) the risk of litigation; (c) the skill required, (d) the quality of work; (e) the contingent nature of the fee and the financial burden; and (f) the awards made in similar cases." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010), citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); S*ix Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Analysis of these factors favor approval of Class Counsel's attorneys' fees and costs.

19

## A. The Results Achieved

53.     In light of the legal and factual complexities of this case, this is a favorable settlement for Class Members.  The fact that these substantial amounts are available to Class Members without the uncertainty of trial, and are being delivered through this expeditious settlement rather than another year of litigation and appeal, qualifies the results of this settlement as excellent under any reasonable assessment. The Class Representative supports the settlement and Class Counsel believes that few, if any, Class Members will object and that those objections, if any, will not be substantial or merited.

## B. The Risk of Litigation

54.     Although each side believes it will prevail in litigation, this Adversary Proceeding is a zero-sum game.  Given the complexity of the issues raised and the strengths of each Party's position, continued litigation, including appeals, is inherently risky.  There exists significant, complex legal and factual issues regarding the application of the WARN Act to the facts and circumstances at issue and the viability of the WARN Action, including, without limitation:

- whether the WARN Notices provided proper and sufficient notice to the Class Members in accordance with the WARN Act;

- whether Defendants were entitled to give fewer than 60 days' notice because of unforeseeable business circumstances;

- whether Defendants were entitled to give fewer than 60 days' notice because it was a faltering company; and

- whether Defendants are entitled to other affirmative defenses.

55.     The Parties have already spent many hours in discovery, analyzing the wage data, attending mediation and informal negotiation.  Continued litigation would be costly, time-consuming and expose the estate to significant risks and uncertainty. The Settlement provides the Parties with certainty, reduces the costs and risks attendant with further litigation.

## C. The Skill Required

56.     Here, Class Counsel's management of the litigation in a disciplined and pragmatic fashion was a benefit to the class.  The case required considerable skill and experience to successfully prosecute. Outten & Golden LLP has substantial experience in large scale class and collective actions on behalf of employees and, specifically, WARN Act class actions such as this one. Jack A. Raisner, a partner in the New York based firm of Outten & Golden LLP, a member of the firm's Class Action Practice Group and co-chair of the firm's WARN Act Class Action Practice Group, has extensive experience litigating plaintiff's employment rights matters, with a focus on the prosecution of class action and impact litigation of employment discrimination and wage and hour claims.  René S. Roupinian, a partner of Outten & Golden LLP and co-chair of the firm's WARN Act Class Action Practice Group and a member of its Class Action Practice Group, has represented thousands of former employees in more than 150 WARN Act cases, many of which were litigated in bankruptcy court. (See Declaration of René S. Roupinian, attached hereto as Exhibit B).

57.     Class Counsel was retained by the Class Representative based on the firm's experience, expertise, and willingness to expend the time necessary to effectively litigate this case. Outten & Golden LLP has been consistently retained in other WARN class actions by thousands of plaintiffs in many federal circuits.  The paucity of expert WARN counsel implies few, if any, other counsel have the skill, experience and expertise required to handle such cases. As shown by the favorable settlement of this matter achieved in the face of the difficult liability issues, Class Counsel provided legal services with considerable skill.  Class Counsel's experienced representation in this case was directly responsible for bringing about the positive settlement and weighs in favor of granting the requested fees.

**D. The Quality of Work**

58. Class Counsel undertook significant efforts to achieve the proposed settlement and made a significant investment of time. Class Counsel undertook extensive discovery, conducted thorough research of the legal issues, briefed and attending a hearing on class certification, participated in status conferences with the court, reviewed documents, compiled extensive damages calculations and participated in a full-day mediation that while unsuccessful, commenced an ongoing discussion that ultimately resulted in the settlement.

**E. The Contingent Nature of the Fee and the Financial Burden**

59. Class Counsel pursued this case on contingency without any assurance of payment. Due also to the contingent nature of the fee arrangement, Class Counsel must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Moreover, given Defendants' bankruptcy, there is an overarching and very real possibility that Class Counsel would prevail on liability, be awarded an allowed claim, which would be uncollectible because the estate is insolvent. The demands and risks of this type of litigation overwhelm the resources – and deter participation – of many traditional claimants' firms. The risk of non-payment at the outset was very substantial as it was not known at that time whether a class would be certified and whether there would be sufficient funds available to pay these claims. In addition, the risk of non-payment was increased by the defenses that Defendants asserted. Class Counsel stood to gain nothing in the event the case was unsuccessful. Because the attendant risk has always been on Class Counsel, the Court should grant the requested attorneys' fees.

**F. Awards Made in Similar Cases**

60. As to fees in similar cases, Class Counsel has consistently been awarded fees of one-third of the class recovery in WARN cases by Bankruptcy and District Courts across the

22

country, including in the bankruptcy courts of the Ninth Circuit. See B*inford, et al. v. First Magnus Capital, Inc.*, Case No. 08 -01494 (Bankr. D. Ariz.) (awarding attorneys' fees of 33⅓% of settlement of $2.6 million case and $2.9 million contingent proceeds) (attached as Exhibit C; *Capizzi, et al. v. AWTR Liquidation, Inc. f/k/a Rhythm and Hues, Inc.*, Adv. Proc. No. 2: 13-ap-01463-NB (Bankr.C.D.Cal. 2013)(awarding attorneys' fees of 33⅓% in WARN settlement of $1 million)(attached as Exhibit D).

61. Indeed, in all of Class Counsel's approximately 50 WARN class action settlements, it has not been awarded less than one-third. S*chuman v. The Connaught Group, Ltd.*, Case No. 12-01051 (Bankr. S.D.N.Y.)(awarding attorneys' fees of 33⅓% of settlement of approximately $675,000); *Murphy v. LenderLive Corp.*, Case No. 13-3135 (D. Colo) (awarding attorneys' fees of 33 1/3%); *Mochnal v. EOS Airlines, Inc*., Case No. 08-08279 (Bankr. S.D.N.Y.) (awarding attorneys' fees of 33⅓% of settlement of approximately $1.7 million); *Iannacone v. Fortunoff Holdings In*c., Case No. 09-22581 (Bankr. S.D.N.Y.) (awarding attorneys' fees of 33⅓% of settlement of approximately $1,330,000); *Guippone v. BH S & B Holdings, LLC*, Case No. 09-01029 (S.D.N.Y.) (awarding attorneys' fees of 33⅓% of settlement of approximately $900,000); *Matzen v. Corwood Laboratories, Inc.*, Case No. 10-08003 (Bankr. E.D.N.Y.) (awarding attorneys' fees of 33⅓% of settlement of approximately $500,000); *Curry v. Caritas Health Care Inc*., Case No. 09-40901 (Bankr. S.D.N.Y) (awarding attorneys' fees of 33⅓% of settlement of approximately $2,650,000); *Callahan v. Taylor Bean & Whitaker Mortgage Corp*., 09-00439 (Bankr. M.D. Fla.)(awarding attorneys' fees of 33⅓% of settlement of $15 million); *Rasheed v. American Home Mortgage Corp*., Case No. 07-51688 (Bankr. D. Del.) (awarding undersigned co-class counsel a fee of 33⅓% of the settlement fund of $6.5 million); *Updike v. Kitty Hawk Cargo, Inc.*, Case No. 07-04179 (Bankr. N.D. Tex.) (awarding attorneys' fees of 33⅓% of $1.4 million); *Bridges v. Continental AFA Dispensing Co.*, Case No.

08-45921 (Bankr. E.D. Mo.) (awarding attorneys' fees of 33⅓% of $1.5 million); *Johnson v.*

*First NLC Financial Services, LLC*, Case No. 08-01130 (Bankr. S.D. Fla.) (awarding attorneys'

fees of 33⅓% of $400,000); *Jackson v. Qimonda*, Case No. 09-50192 (MFW)

(Bank.Del)(awarding attorneys' fees of 33 1/3% of settlement of more than $10 million); and

*Aguiar v. Quaker Fabric Corporation,* Case No. 07-51716 (Bankr. D. Del.) (awarding attorneys'

fees of 33⅓% of $1 million).  In more than 30 WARN actions, Class Counsel was awarded a

one-third fee.[3]

62.    In addition, to an attorney fee of one-third of the common fund, Class Counsel is

seeking reimbursement for out-of-pocket costs incurred in the litigation not to exceed $10,000.

To date, Class Counsel has incurred $6,534.83 in prosecuting this action, and expects to incur

additional expenses in connection with seeking preliminary and final approval of the settlement,

mailing the Class Notice, and communicating with Class Members regarding the Settlement.

## XI.    APPROVAL OF  THE CLASS REPRESENTATIVE'S SERVICE AWARD

63.    Courts acknowledge that named plaintiffs in class and collective actions play a

crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny.

Here, Plaintiff filed a federal lawsuit that is searchable on the internet and may become known to

prospective employers when evaluating the person.  Plaintiff retained Outten & Golden LLP to

---

[3]  *See, e.g. Madley v. Florida Cypress Gardens, Inc.*, Case No. 8:03-CV-00795-T-17TBM (M.D. Fla.); *Adkins v. Pritchard- Brown*, Case No. 5:03CV129-OC 10 GRJ (M.D. Fla.); *In re Thomaston Mills, Inc*., Case No. 01-52544 (RFH) (Bankr. M.D. Ga.); *In re Consolidated Freightways Corporation*, Case No. 02-24284-MG (Bankr. C.D. Cal.); *Powell v. Creighton Incorporated*, Case No. 1:01CV779 (M.D.N.C.); *In re CTC Communications Group, Inc*., Case No. 02-12873 (PJW) (Bankr. D. Del.); *In re Dollar Land, Inc.*, Case No. 02-14547 (Bankr. E.D.Pa.); *Johnson v. GMAC Mortgage Group, Inc*., Case No. C04-2004-LRR (N.D. Iowa 2004); *Morris v. Greenwood Mills. Inc*., Civil Action No. 8:02-221-24 (D. S.C.); *In re Inacom Corp*, Case No. 00-2426 (PJW) (Bankr. D. Del.); *Teligent, Inc.*, Case No.: 01-12974 (SMB) (S.D.N.Y.); *Bandel v. L.F. Brands Marketing, Inc.*, Civil Action No. 04 CV 1672 (CSH) (S.D.N.Y.); *Baker v. The National Machinery Company*, Case No. 3:02-CV-7444 (N.D. Ohio); *Deninno v. Penn American Coal Company, L.P*., Civil Action No. 03-0320 (W.D. Pa.); *In re Pliant Systems, Inc.*, Case No. 01-01264-5 ATS (Bankr. E.D.N.C.).

commence this action at a point when he had been terminated from his employment with Defendants. Plaintiff agreed to initiate the class action as named Plaintiff at a point when his future was uncertain and employment prospects potentially dimmed by suing his former employer.

64.     Mr. Wojciechowski should be awarded a service payment for the significant work he undertook on behalf of the Class. He expended time and effort to assist with the preparation of the Complaint, provided Class Counsel a declaration in support of the motion for class certification, and spent significant time speaking to Class Counsel in preparation for mediation and subsequent settlement negotiations. He assisted with informal discovery and provided counsel with relevant documents in his possession. Plaintiff performed important services for the benefit of the Class in commencing the litigation and in the preparation for the mediation. Accordingly, the payment is appropriate and justified as part of the overall Settlement in light of the value of his services to the Class and risks taken on behalf of the Class. Moreover, Defendants do not oppose this proposed award of service payment to the Class Representative.

65.     Finally, the amount of the service award agreed to by the Parties is also consistent and on scale with amounts awarded in WARN class actions. *Capizzi et al v. AWTR Liquidation, Inc.*, Case No. 2:13-ap-01209-NB (Bankr. C.D.Ca 2013) ($10,000 service award to each of two class representatives in WARN settlement of $1 million); *Guippone v. BH S & B Holdings, LLC*, Case No. 09-01029 (Bankr. S.D.N.Y. 2009) ($10,000 service award to class representative in WARN settlement of $900,000 for a class of about 300 members); *Conn v. Dewey & Lebeouf LLP*, Adv. Pro. No. 12-01672(MG) (Bankr. S.D.N.Y. 2012) ($15,000 service award to class representative in WARN settlement); *Aguiar v. Quaker Fabric Corporation*, Case No. 07-51716 (Bankr. D. Del. 2007) ($15,000 service payment to class representative on behalf of a certified class of 900 for $1 million); *Binford et al v. First Magnus Capital, Inc.*, Case No. 08-01494

Case: 14-04152    Doc# 54-1    Filed: 12/24/15    Entered: 12/24/15 10:27:20    Page 25 of 27

(GBN) (Bankr. D. Ariz. 2010) (awarding eight class representatives service payments of $7,500, totaling $60,000, from settlement fund of $2.6 million cash plus $2.9 million contingent proceeds) (attached hereto as Exhibit C); *Updike v. Kitty Hawk Cargo, Inc.*, Case No. 07-04179 (Bankr. N.D. Tex. 2007) (awarding $10,000 service payments to two class representatives in a settlement of $1.4 million on behalf of a certified class of 392 members); *Bridges v. Continental AFA Dispensing Co.*, Case No. 08-45921 (Bankr. E.D. Mo. 2008) (awarding $10,000 service payment to class representative in a class settlement of $1.5 million for approximately 325 employees); *Johnson v. First NLC Financial Services, LLC*, Case No. 08-01130 (Bankr. S.D. Fla. 2008) ($5,000 service payments to two class representatives in a $400,000 chapter 7 settlement); *Murphy v. LenderLive Corp.*, Case No. 13-3135 (RBJ) (D. Colo. 2015) ($5,000 service payments to two class representatives in a $300,000 WARN settlement). According, the service award for Plaintiff should be approved.

## XII.   CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court:

1)  grant the Joint Motion in its entirety;

2)  approve the Defendants' entry into the proposed compromise under the terms as set forth in the Settlement Agreement;

3)  preliminarily approve the Settlement of this class action (attached hereto as Exhibit E);

4)  approve the form of the Class Notice;

5)  set a Final Hearing date for approval of the settlement;

6)  upon the Final Fairness Hearing, enter an order finally approving the Settlement Agreement, including class counsel's fees and costs (attached hereto as Exhibit F); and

26

7) accord such further and other relief as is just and proper.

Dated: December 24, 2015

Respectfully submitted,

By: _/s/ Gail Lin Chung_
Gail L. Chung (CA State Bar No. 212334)
**OUTTEN & GOLDEN LLP**
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Fax: (646) 509-2070
Email: gl@outtengolden.com

Jack A. Raisner
René S. Roupinian
**OUTTEN & GOLDEN LLP**
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Email: jar@outtengolden.com
Email: rsr@outtengolden.com

*Attorneys for Plaintiff Peter Wojciechowski*
*and the certified class*

_/s/ Robert A. Franklin_
Stephen T. O'Neill (115132)
Robert A. Franklin (091653)
**DORSEY & WHITNEY LLP**
305 Lytton Avenue
Palo Alto, CA 94301
Telephone:(650) 857-1717

*Attorneys for Defendants ClearEdge Power,*
*Inc. and ClearEdge Power, LLC*

27